[Civ. No. 1312.   First Appellate District.—February 6, 1914.]

## CHARLES FEY, doing business as CHARLES FEY & COMPANY, Respondent, v. ROSSI IMPROVEMENT COMPANY, Inc., Appellant.

LANDLORD AND TENANT—LEASE OF PREMISES ON WHICH TO MANUFACTURE NICKEL AND SLOT MACHINES—LAWFULNESS OF ENTERPRISE—CANCELLATION OF LEASE.—A complaint in an action by a lessee for the cancellation of the lease, which alleges that the premises were leased for the purpose of conducting therein the business of manufacturing "coin operating machines, commonly known as nickel-in-the-slot machines," and that by an act of the legislature in the year 1911, the business of manufacturing or having in possession any nickel-in-the-slot machine became unlawful, fails to state a cause of action upon the theory that the subsequently enacted law rendered the terms of the lease impossible of performance.

ID.—NICKEL-IN-SLOT MACHINES—CONSTRUCTION OF SECTION 330a OF PENAL CODE.—Section 330a of the Penal Code, enacted in 1911, does not prohibit or penalize the manufacture of nickel-in-the-slot machines, but has reference only to such machines when they are intended for gambling purposes, "upon the result of action of which money or other valuable thing is staked or hazarded."

ID.—WORDS AND PHRASES — MEANING OF NICKEL-IN-THE-SLOT MACHINES.—The phrase "nickel-in-the-slot machine" ordinarily has reference only to that "numerous class of catch-penny contrivances" which, when a nickel or other small coin is dropped into the slot, will return something of value without any element of chance other than that usually present in ordinary transactions of barter and trade.

ID.—PLEADING — DEMURRER — ADMISSION OF ALLEGATIONS OF COMPLAINT.—The general rule of pleading, which admits as true upon demurrer all matters of fact averred in a complaint, has no application to facts of which a court may take judicial notice; and a demurrer never admits the conclusion of law to be deduced from those facts.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   John L. Childs, Judge presiding.

The facts are stated in the opinion of the court.

Thomas H. Breeze, for Appellant.

Wm. Tomsky, for Respondent.

LENNON, P. J.—This is an appeal from a judgment upon the judgment-roll alone in an action instituted primarily for the purpose of procuring the cancellation of a written lease of certain premises, executed to the plaintiff by the defendant. Judgment was rendered and entered for the plaintiff. The sufficiency of the facts stated in the plaintiff's complaint to constitute a cause of action as against demurrer is the only question presented for decision.

Plaintiff's complaint, after pleading the execution of the lease, alleged "that in accordance with the conditions of said lease the said premises were leased by plaintiff from defendant for the purpose of conducting therein a business of manufacturing of coin operating machines, commonly known as nickel-in-the-slot machine, and for no other purpose.

"That in accordance with said lease plaintiff has complied with all of the terms of said lease up to the time of the commencement of this action.

"That by an act of the legislature of the state of California in the year 1911, the business of manufacturing or having in possession any nickel-in-the-slot machine became unlawful, and by reason thereof the plaintiff was compelled to abandon said business, and that by virtue of the said contract of lease the plaintiff cannot use the said premises for any other purpose, and that unless by an adjudication of this honorable court, said defendant will compel plaintiff to continue carrying out the provisions of said lease.

"That after the enactment of said law and prior to the commencement of this action plaintiff tendered said premises to defendant and offered to cancel said lease, but the defendant has failed, neglected and refused same to do."

The defendant's demurrer should have been sustained. The facts above stated do not constitute a cause of action for the cancellation of the lease in question. The statute relied upon by the plaintiff is imperfectly pleaded; but a resort to the statutes of 1911, which by a general reference are made a part of plaintiff's complaint, reveals but one enactment of the legislature at all applicable to the plaintiff's cause of action, and that is entitled, "An Act to add a new section to the Penal Code of the state of California, to be numbered section 330a, relating to gambling by the use of slot machines etc." (Stats. 1911, chap. 483, p. 951.)    The text of that act in its

essential features is as follows: 'Every person who has in his possession or under his control . . . or who permits to be placed, maintained or kept in any room . . . owned, leased or occupied by him . . . any slot or card machine, contrivance, appliance or mechanical device upon the result of action of which money or other valuable thing is staked or hazarded by placing or depositing therein any coins . . . or as a result of the operation of which any merchandise, money, representative or articles of value . . . is won or lost . . . when the result of action or operation of such machine . . . is dependent upon hazard or chance, . . . is guilty of a misdemeanor.''

As we read and construe this new section of the Penal Code, the manufacture of nickel-in-the-slot machines is neither prohibited nor penalized. True, a person could not manufacture a ''slot machine'' without having the completed machine in his possession for a time at least; but the title and text of the statute clearly indicate that the possession referred to therein shall be of slot machines intended for gambling purposes, ''upon the result of action of which money or other valuable thing is staked or hazarded.'' The complaint in the present case does not allege that the demised premises were leased for the purpose of manufacturing any of the gambling devices designated in the statute. The allegation of the complaint in this behalf is merely that the premises were leased for the purpose of conducting therein the business of manufacturing ''coin operating machines commonly known as nickel-in-the-slot machines. . . . '' It is a matter of common knowledge that coin operated slot machines are manufactured, and generally used by small tradesmen, places of amusement, and public service corporations, upon the result of the action of which money or other thing of value is not hazarded, among which, for instance, may be noted the coin operated slot machines attached to talking machines, music boxes and autopianos; those which vend small articles of merchandise such as candy, cigars, stamps, etc., and those which control gas and telephone service. In keeping with this common knowledge a slot machine has been authoritatively defined as ''a vending machine or the like, having a slot in which a coin may be dropped to cause the delivery of merchandise, or to permit the use of a telephone, or for some like purpose.'' (Webster's Dictionary.) And by the same authority, when such

a machine is adjusted so that it may be operated by the deposit of a five-cent piece, it is defined to be "a nickel-in-the-slot" machine. It may therefore be said with certainty that the phrase "nickle-in-the-slot machine" ordinarily has reference only to that "numerous class of catch-penny contrivances" which, when a nickel or other small coin is dropped into the slot, will return something of value without any element of chance other than that usually present in ordinary transactions of barter and trade (*State* v. *Vasquez,* 49 Fla. 126, [38 South. 830].) Obviously a criminal complaint, charging a person merely with having in his possession "a coin operating machine commonly known as a nickel-in-the-slot machine," would not, when measured by the commonly known definition of "a nickel-in-the-slot machine," survive the test of a demurrer grounded upon insufficiency of the facts stated to constitute an offense within the meaning of section 330a of the Penal Code. This being so, it follows that the allegations of the plaintiff's complaint in the present case, that the demised premises were leased to him solely for the purpose of conducting therein "the business of manufacturing coin operating machines commonly known as nickel-in-the-slot machines," cannot be construed to mean that the terms of the lease restricted the use of the premises to the manufacture of the particular and peculiar kind of "slot machine" denounced by the statute. In short, the statute under discussion relates only to gambling machines, and does not purport to make the business of manufacturing "coin operating machines commonly known as nickel-in-the-slot machines" unlawful. It must be held, therefore, that the plaintiff's complaint does not sufficiently state a cause of action for cancellation of the lease in question upon the theory that the subsequently enacted law rendered the terms of the lease impossible of performance.

Counsel for the plaintiff refuses to discuss the scope and effect of the statute pleaded as an essential element of the plaintiff's cause of action; but in support of the judgment invokes the general rule of pleading which requires, for the purposes of a decision upon demurrer, that the allegations of a complaint must be taken to be true. With this general rule as a basis it is contended that the enactment, scope, and effect of the statute relied upon must be accepted as pleaded. The

absurdities which would be certain to result from such a construction of the rule in question are too obvious to require illustration here; and it will suffice to say in response to plaintiff's contention that the general rule of pleading, which admits as true upon demurrer all matters of fact averred in a complaint, has no application to facts of which a court may take judicial notice; and that a demurrer never admits the conclusion of law to be deduced from those facts (*French* v. *Senate*, 146 Cal. 604, [2 Ann. Cas. 756, 69 L. R. A. 556, 80 Pac. 1031]; *First Nat. Bank etc.* v. *Lewinson*, 12 N. M. 147, [76 Pac. 288]; *Hester* v. *Thomson*, 35 Wash. 119, [76 Pac. 734]; *Gill* v. *Manhattan Life Ins. Co.*, 11 Ariz. 232, [95 Pac. 89]).

The judgment is reversed, with directions to the lower court to sustain the defendant's demurrer.

Richards, J., and Kerrigan, J., concurred.